UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIM FLENTYE and 7703 SHERIDAN ROAD BUILDING CORP. d/b/a FLENTYE PROPERTIES, | ) ) ) ) |
| Plaintiffs, | ) ) ) No. 06 C 3492 |
| v. | ) ) Hon. Mark Filip |
| MICHAEL L. KATHREIN a/k/a MICHAEL LEE, and KATHREIN LLC d/b/a LEE STREET MANAGEMENT, | ) ) ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

Tim Flentye and 7703 Sheridan Road Building Corporation d/b/a Flentye Properties (collectively, "Plaintiffs") filed suit against Michael Kathrein, a/k/a Michael Lee, and Kathrein LLC d/b/a Lee Street Management (collectively, "Defendants"). Plaintiffs' First Amended Complaint ("Complaint") alleges: violations of the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d) (Count I); unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) (Count III); unfair competition under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 *et seq.* (Count IV); defamation (Count II); misappropriation of identity (Count V); and intentional infliction of emotional distress (Count VI). (D.E. 15.)[1] The case is before the Court on the motion to dismiss of Michael Kathrein, a/k/a Michael Lee ("Lee") (D.E. 24), and the motion to dismiss and/or motion for a more definite statement of Kathrein

---

[1] The relevant docket entries are cited as "D.E. __."

1

LLC ("Kathrein"), which is alleged to do business as Lee Street Management. (D.E. 19.) For the reasons stated below, the motions are granted in part and denied in part.

RELEVANT FACTS[2]

Plaintiff Tim Flentye ("Flentye") is a registered agent of Flentye Properties, an Illinois assumed name under which the Flentye family has promoted apartment rental services in Chicago for many years. (*Id.* ¶¶ 2, 11, 54.) Lee is the sole proprietor of Lee Street Management ("Lee Street"), an unregistered entity promoting apartment rental services in the Chicago area. (*Id.* ¶ 3.) Plaintiffs and Defendants rent similar apartments in the Rogers Park neighborhood of Chicago, and therefore are competitors. (*Id.* ¶¶ 9-10, 16-18.)

Lee Street promotes apartment rental services utilizing real estate owned by Kathrein. (*Id.* ¶ 3.) The Complaint refers to Kathrein as a "corporation organized under the laws of Delaware." (*Id.*) Plaintiffs allege that Lee devised Kathrein for the sole purpose of holding title to real estate through which Lee operates Lee Street's activities. (*Id.* ¶ 4.)

Plaintiffs aver that they have invested considerable time and resources in the service marks "Tim Flentye," "Flentye," and "Flentye Properties." (*Id.* ¶¶ 11-14.) Plaintiffs use the marks to promote their real estate business, and through such use and related commercial activities, Plaintiffs have "acquired a favorable and extremely valuable reputation." (*Id.* ¶ 14.)

Plaintiffs allege that Defendants registered the domain name flentye.com on September 20, 2000.[3] (*Id.* ¶ 20.) In April of 2003, Defendants registered the domain names timflentye.com

---

[2] The facts are taken from the Complaint. (D.E. 15.) The Court accepts the allegations as true, as precedent instructs, for present purposes.

[3] Domain names facilitate the public's access to websites, and serve as the primary identifier of the source of information, products, or services. (*Id.* ¶ 19.)

and flentyeproperties.com. (*Id.* ¶¶ 21-22.) In March of 2006, Plaintiffs contacted Lee and Lee Street through their attorneys and demanded that they cease and desist the use of these three domain names. (*Id.* ¶ 25.) On April 7, 2006, "Plaintiffs filed a UDRP complaint against Defendants with [the] ICANN domain arbitration provider the National Arbitration Forum." (*Id.* ¶ 26.[4]) After both plaintiffs and defendants in the arbitration proceeding participated in selecting a three-member UDRP panel, the panel issued a unanimous decision ordering that timflentye.com, flentye.com, and flentyeproperties.com be transferred from Defendants to Plaintiffs. (*Id.* ¶¶ 28-29.) The decision, issued on May 17, 2006, held that: Plaintiffs owned trademark rights to the marks; all three of the domain names were either identical to, or confusingly similar to, Plaintiffs' marks; Defendants had no rights or legitimate interest in any of these domain names; and the domain names were registered and used by Defendants in bad faith. (*Id.* ¶ 29.) On June 7, 2006, less than two months after this decision, Defendants allegedly registered the domain name timflentye-not.com, and used it to direct users to their own website, leestreet.com. (*Id.* ¶¶ 23, 43-44.) On May 30, 2006, Lee filed a "complaint for judicial review and petition to vacate arbitration award," in the Circuit Court of Cook County. (*Id.* ¶ 42; D.E. 19-2 at 4.)

Plaintiffs also allege that Defendants have wrongfully used the Flentye name through the use of a "meta tag." (*Id.* ¶¶ 30-35.) Meta tags are key words associated with a website's subject matter that can be embedded into the source code of a website to direct searchers of these keywords to the website. (*Id.* ¶ 30.) Plaintiffs allege that Defendants are using the meta tag

---

[4] Although not specified in the pleadings, "UDRP" is understood to refer to the Uniform Domain Name Dispute Resolution Policy adopted by the Internet Corporation for Assigned Names and Numbers ("ICANN"). *See* http://www.icann.org/udrp/udrp-policy-24oct99.htm.

"Flentye," on a website they own, apartmentzone.us, to direct users to leestreet.com. (*Id.* ¶¶ 31-33.) Both apartmentzone.us and leestreet.com were registered to Lee in 2002 and 2000, respectively. (*Id.* ¶¶ 34-35.)

In the defamation count, Plaintiffs state that Defendants have published defamatory statements concerning Flentye on the websites timflentye.com, flentye.com, flentyeproperties.com, timflentye-not.com, timothyflentye.com, and rogerspark.tv. (*Id.* ¶ 72.) These websites allegedly include false assertions that "Flentye uses a closed circuit video camera for illegal and/or sexually motivated purposes, . . . record[s] activities through [tenants'] bedroom windows at night," and possesses "illegally obtained recordings" that were recorded in this manner. (*Id.*) Defendants also allegedly published statements that Plaintiffs "'use [Chicago Alderman] Joe Moore as a tool to satisfy [their] own personal, vindictive obsession' and thus 'put tenants at risk,' that Plaintiff Tim Flentye and Alderman Moore engage in 'harassment and co-abuse of office,' and that Plaintiff Tim Flentye lacks an 'ethical compass.'" (*Id.*) Plaintiffs also allege that on their websites, Defendants have published "defamatory assertions that . . . Flentye and his family embrace thievery, deviance and racism, as well as profanity-laced depictions of . . . Flentye engaging in bestiality, scatology, and other highly defamatory assertions of a sexually repugnant nature." (*Id.* ¶ 73.)

Additionally, Plaintiffs allege under their intentional infliction of emotional distress count that Defendants "publish a large color photograph of Tim Flentye's family cemetery marker," and that "[t]his photograph includes visible garbage at the base of the . . . marker and it is believed to have been photographed by Defendants or its agents." (*Id.* ¶ 97.) In the "Misappropriation of Identity" count, Plaintiffs further allege that Defendants employ "numerous

4

e-mail addresses subsuming Plaintiff's name such as 'timflentye@gmail.com' in order to tarnish the goodwill of Plaintiffs." (*Id.* ¶ 92.)

Plaintiffs allege that "Defendants use these domain names with the intent to confuse Plaintiffs' current and prospective customers as to the websites' source and thus misleadingly divert these consumers to pornographic websites and/or websites wherein Defendants publish materials intended to drive away Plaintiffs' customers . . . ." (*Id.* ¶ 64.) Plaintiffs allege that in addition to the commercial benefit Defendants enjoy by harming their direct competitor, Defendants also receive money by linking these websites to commercial pornographic websites which pay Defendants for the "hits" generated by Defendants' websites. (*Id.* ¶ 65.)

Kathrein has moved to dismiss or, in the alternative, for a more definite statement. (D.E. 19.) Lee has also filed a *pro se* motion to dismiss on behalf of himself and purportedly on behalf of Kathrein. (D.E. 24.)

## JURISDICTION

The Court has jurisdiction over the Lanham Act and Anti-Cybersquatting Consumer Protection Act claims pursuant to 15 U.S.C. §§ 1125(a) & (d). The court has jurisdiction over the state unfair competition claim under 28 U.S.C. § 1338(b) because the claim is joined with a substantial and related claim under the trademark laws of the United States. *See* 15 U.S.C. § 1051, *et seq.* The Court has jurisdiction over the defamation, misappropriation of identity, and intentional infliction of emotional distress claims under 28 U.S.C. § 1367.

## STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted." *Johnson v. Rivera*, 272 F.3d 519,

520-21 (7th Cir. 2001). In ruling on a motion to dismiss, the court must assume all facts alleged in the complaint to be true and view the allegations in the light most favorable to plaintiffs. *See, e.g., Singer v. Pierce & Assocs., P.C.*, 383 F.3d 596, 597 (7th Cir. 2004). Dismissal for failure to state a claim is appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *accord, e.g., Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005) (collecting cases).

Rule 12(e) provides that "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e). Rule 12(e) and related caselaw make it "plain that the rule is designed to strike at unintelligibility rather than want of detail. If the pleading meets the requirements of Rule 8 . . . and fairly notifies the opposing party of the nature of the claim, a motion for a more definite statement should not be granted." *Wishnick v. One Stop Food & Liquor Store, Inc.*, 60 F.R.D. 496, 498 (N.D. Ill. 1973); *accord, e.g., Scholz Design, Inc. v. Buralli*, No. 01 C 3650, 2001 WL 1104647, at *4 (N.D. Ill. Sept.18, 2001); *Trans States Airlines v. Pratt & Whitney Canada, Inc.*, No. 92 C 1658, 1992 WL 211023, at *2 (N.D. Ill. Aug. 21, 1992). That is the case because often a litigant can fairly be expected to gain more information through interrogatories and other discovery devices.

## DISCUSSION

I.   Plaintiffs Have Adequately Pleaded a Veil-Piercing Claim As a Basis for Kathrein's Liability

Kathrein moves to dismiss the Complaint, and moves in the alternative for a more

6

definite statement under Federal Rule of Civil Procedure 12(e). In so moving, Kathrein claims

that Plaintiffs' Complaint fails to make sufficient specific allegations against Kathrein as a party.

(D.E. 21 at 2.)

The Complaint names Kathrein as a party doing business as Lee Street Management.[5]

(D.E. 15.) The Complaint further alleges that Defendant Lee "devised the Kathrein LLC entity

for the sole purpose of holding title to local real estate through which [he] operates Lee Street

Management." (*Id.* ¶ 4.) Kathrein states that it cannot form a responsive pleading because it

cannot determine whether Plaintiffs are alleging that Lee conspired with Kathrein to engage in

tortious conduct or are asserting a corporate veil-piercing theory.[6] (D.E. 21 at 2.) However, it is

well established that "complaints need not set out either legal theories or comprehensive factual

narratives." *Rapid Test Products, Inc. v. Durham School Services, Inc.*, 460 F.3d 859, 860 (7th

Cir. 2006) (collecting cases). Therefore Kathrein's motion to dismiss and motion for a more

---

[5] Kathrein argues that since the "doing business as" language (abbreviated "d/b/a") appears in the Complaint's caption rather in the enumerated paragraphs, it is not a factual allegation and therefore need not be accepted as true. (D.E. 26 at 5) (citing *Kraemer v. Elmira Auto Paint Supplies, Inc.*, 903 F. Supp. 315 (N.D.N.Y. 1995)). However, *Kraemer* does not support the Kathrein's contention that "[t]he caption is not a factual allegation and need not be accepted as true," as the case does not even address the issue. (D.E. 26 at 5.) Although a caption alleging a "doing business as" relationship may be an insufficient legal conclusion standing alone, *see Lachmund v. ADM Investor Services, Inc.*, 26 F. Supp. 2d 1107, 1113-14 (N.D. Ind. 1998), it will survive a motion to dismiss when accompanied by "at least a few facts which outline [plaintiff's] claim." *Id.* at 1113 (internal quotation marks and citation omitted). As discussed below, Plaintiffs have satisfied this standard. *Accord, e.g., Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005).

[6] Kathrein claims that, besides being insufficient, the allegations in the Complaint are wrong. (D.E. 21 at 2.) Specifically, Kathrein states that it is a corporation, and that it is not the same as, or doing business as, Lee Street. (*Id.*) The Court disregards these averments, as all allegations in the Complaint must be accepted as true. *See McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006).

definite statement cannot rest on a failure to plead legal theories.[7] *See, e.g., Brill v. Central States*, No. 82 C 7973, 1985 WL 1448, at *3 (N.D. Ill. May 22, 1985) (denying a motion for a more definite statement because "[a] plaintiff is not required to allege his legal theory of recovery in the complaint") (collecting cases).

Plaintiffs do not claim to be relying on one, single theory of liability for the claims against Kathrein, but they do identify a piercing-the-corporate-veil or alter ego theory of liability. (D.E. 25 at 3.) To pierce a corporate veil under Illinois law, Plaintiffs must eventually prove that there is "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Sea-Land Servs., Inc. v. Pepper Source*, 993 F.2d 1309, 1311 (7th Cir. 1993) (internal quotation marks and citation omitted); *accord Int'l Fin. Servs. Corp. v. Chromas Technologies Canada, Inc.*, 356 F.3d 731, 736 (7th Cir. 2004). Plaintiffs can rely on this theory even if Kathrein is a limited liability company, rather than a corporation. *See In re Teknek, LLC*, 343 B.R. 850, 863 n.6 (N.D. Ill. 2006) ("Limited liability companies may be subjected to veil-piercing actions in a way similar to the way corporations are deemed alter egos of their shareholders.") (collecting cases). Furthermore, Plaintiffs potentially could pierce the veil of Kathrein via Lee and/or Lee Street through a process sometimes referred to as "reverse piercing." *Sea-Land Servs.*, 993 F.2d at 1311 (referring to 'reverse piercing' in the context of a

---

[7] The case Kathrein cites for this proposition, *Lincoln Laboratories v. Savage Laboratories*, 26 F.R.D. 141 (D. Del. 1960), is inapposite. (D.E. 21 at 2.) In *Lincoln Labs*, the Court granted a 12(e) motion in part because the defendant "should not be required to guess which of the plaintiff's 60 trademarks he is supposed to be infringing when it would be a simple matter for the plaintiff to specify" which marks were germane. *Id.* at 143. That is not the case here: there is no confusion about which marks are at issue.

8

claim against one dissolved company seeking the assets of the sole shareholder (the alter ego of the dissolved company), and his other alter ego corporations).

Kathrein argues that to the extent the alleged alter ego relationship is premised on fraud, Plaintiffs must satisfy Federal Rule of Civil Procedure 9(b). (D.E. 26 at 4.) However, Rule 9(b) "generally does not apply to piercing allegations." *Wachovia Securities, LLC v. Neuhauser*, No. 04 C 3082, 2004 WL 2526390, at *11 (N.D. Ill. Nov. 05, 2004) (collecting cases). To state a veil-piercing claim, Plaintiffs typically are only required to satisfy the notice pleading standards of Rule 8(a). *Kellers Sys, Inc. v. Transport Int'l Pool, Inc.*, 172 F. Supp. 2d 992, 1000-01 (N.D. Ill. 2001). If the Complaint "fairly alleges an entity exists as the alter ego of another and provides factual manifestations suggesting the existence that the two operate as a single entity, a motion to dismiss will be denied." *Id.* at 1001 (citing *Steel Warehouse of Wisconsin, Inc. v. Caterpillar, Inc.*, No. 90 C 20053, 1990 WL 304266, at *2 (N.D. Ill. Nov. 13, 1990)); *see also Hann v. The Paul Revere Ins. Co.*, No. 03 C 1062, 2004 WL 557380, at *2 (N.D. Ill. Feb. 17, 2004) (stating that if a plaintiff alleges an alter ego relationship, "dismissal of her complaint is unwarranted if she alleges any facts which suggest that the corporations operated as a single entity").

Plaintiffs fulfill Rule 8(a) notice pleading standards by alleging that Lee Street utilizes real estate owned by Kathrein, and by alleging that Lee devised Kathrein "for the sole purpose of holding title to local real estate through which [Lee] operates Lee Street Management." (D.E. 15 ¶¶ 3-4.) Read in the light most favorable to Plaintiffs, this appears to be an allegation that Kathrein is the 'alter ego' of Lee Street under a veil-piercing analysis. *See Ishkhanian v. Forrester Clinic S.C.*, No. 02 C 9339, 2003 WL 21479072, at *3 (N.D. Ill. June 25, 2003)

9

(plaintiff properly stated a veil piercing claim against defendant by alleging that defendant "is the owner and a principal in the company," and that defendant once said "'I am the king, if anything happens to me, you, you everyone will be out of a job, you are nothing without me.'"); *Steel Warehouse*, 1990 WL 304266, at *2 (plaintiffs properly stated a veil-piercing claim by alleging an alter ego relationship and "manifestations of . . . control" between the two entities). The propriety of allowing discovery to proceed is underscored by the fact that Lee Street is an unregistered entity that cannot be researched through public records or documents.

In its reply brief, Kathrein points out that it was not a party to the UDRP arbitration proceeding. (D.E. 26 at 2.) Kathrein claims that "Plaintiffs seek an injunction and damages based on that arbitration proceeding," and since Kathrein "was not a party in the arbitration proceeding . . . Plaintiffs cannot now include [Kathrein] as being the same individual or as having registered and used the domain name." (*Id.*) Kathrein cites no authority to show that Plaintiffs are precluded from suing Kathrein because it was not a party to the prior arbitration proceedings. Even if Kathrein had support for this contention, the argument would be waived since it was raised for the first time in the reply brief. *See Maclin v. SBC-Ameritech*, No. 05 C 2517, 2007 WL 683782, at *11 (N.D. Ill. March 2, 2007).[8] Kathrein also argues for the first time in its reply brief that "Kathrein LLC is plainly absent from the Michael Lee Kathrein d/b/a filing with Cook County." (D.E. 26 at 5.) Kathrein similarly cites no authority to show that this undermines the alleged alter ego relationship, and the Court also finds this argument to be waived.

---

[8] Moreover, it is unclear at best, from Kathrein's perspective, whether the relief sought is predicated on the result of the arbitration, at least in whole. In the face of such factual ambiguity, dismissal under Rule 12(b)(6) is inappropriate.

II.     Plaintiffs Have Adequately Stated an ACPA Claim

Kathrein and Lee move to dismiss Plaintiffs' ACPA claim. (D.E. 15 ¶ 50.) The ACPA was enacted in 1999 to combat the "deliberate, bad-faith, and abusive registration of Internet domain names in violation of the rights of trademark owners," a practice also known as cybersquatting. *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 267 (4th Cir. 2001) (internal quotation marks and citation omitted). The ACPA applies to any person who "'registers, traffics in, or uses a domain name' that is 'identical or confusingly similar to' a 'distinctive' mark or that is 'identical or confusingly similar to or dilutive of' a famous mark" with a "'bad faith intent to profit.'" *Ford Motor Co. v. Catalanotte*, 342 F.3d 543, 546 (6th Cir. 2003) (quoting 15 U.S.C. § 1125(d)(1)(A)-(B)); *accord Virtual Works*, 238 F.3d at 267-68; *Nike, Inc. v. Circle Group Internet, Inc.*, 318 F. Supp. 2d 688, 690-91 (N.D. Ill. 2004). To state a claim under the ACPA, a plaintiff must allege that (1) it had a distinctive or famous mark at the time the domain name was registered, (2) the defendant registered, trafficked in, or used a domain name that is identical or confusingly similar to plaintiff's mark, and (3) the defendant had a bad faith intent to profit from that mark. *V'soske, Inc. v. Vsoske.com*, No. 00 C 6099, 2001 WL 546567, at *6 (S.D.N.Y. May 23, 2001).

Kathrein argues that Plaintiffs' ACPA count should be dismissed because "there is no allegation that [Kathrein] has done anything with respect to engag[ing] in false or misleading activity." (D.E. 21 at 4.) In this regard, Kathrein appears to be arguing that there is no allegation that Kathrein "registers, traffics in, or uses" the domain names. *See Bird v. Parsons*, 289 F.3d 865, 881 (6th Cir. 2002) (since there is no allegation that defendants "*registered* a domain name, . . . and liability for *using* a domain name can only exist for the registrant or that person's

authorized licensee," the complaint must be dismissed against those defendants because it "contains no allegation that . . . [those defendants] are . . . licensee[s]") (citing 15 U.S.C. § 1125(d)(1)(D)) (emphases in original). But, at a minimum, Plaintiffs do allege that Defendants as a group registered the domain names at issue (D.E. 15 ¶¶ 20-23), so the Court cannot say that Kathrein could not be considered the registrant or an authorized licensee.[9] *See Hamptons Locations, Inc. v. Rubens*, No. 01 C 5477DRHWDW, 2005 WL 2436209, at *8 (E.D.N.Y. Sept. 30, 2005) (in ACPA action, evidence that individual defendant was involved "in the development, launching, and operation of the website" precluded summary judgment in favor of defendant).

Even if there were no allegations that Kathrein registered the website, Plaintiffs have made allegations that Kathrein has engaged in a violation of the ACPA as the alter ego of Lee, as discussed above. (D.E. 15 ¶ 4.) A plaintiff can pursue a trademark infringement claim under a veil-piercing theory, *Bally Schuhfabriken AG v. Bally Manufacturing Corp.*, No. 92 C 0312, 1992 WL 80554, at *2 (N.D. Ill. Apr. 8, 1992) (collecting authority), and Plaintiffs can presumably do the same with an ACPA claim, since both trademark infringement and ACPA claims are advanced under the Lanham Act. The ACPA does contain a specific provision (that does not apply to the Lanham Act generally) stating that "[a] person shall be liable for using a domain name . . . only if that person is the domain name registrant or that registrant's authorized

---

[9] Defendants argue that Plaintiffs' allegations concerning Lee's state court lawsuit seeking review of the arbitration decision demonstrate that Kathrein has not registered or used the domain names in question. (D.E. 19 ¶ 11.) With all respect, the Court fails to see how Lee's state court suit necessarily proves *anything* with regard to Kathrein's conduct. Kathrein could have been the alter ego of Lee and Lee Street all this time without Plaintiffs' knowledge, which would explain why Kathrein was not a party to the arbitration proceeding and Lee's subsequent petition for review.

licensee." 15 U.S.C. § 1125(d)(1)(D). However, if Kathrein is deemed to be the alter ego of Lee or Lee Street, Kathrein seemingly would be deemed the "registrant" under the statute, since "the separate personalit[y]" of Kathrein would "no longer exist." *Sea-Land Servs.*, 993 F.2d at 1311. Therefore, based on the allegations in the Complaint, Kathrein seemingly could be considered the "domain name registrant or that registrant's authorized licensee." 15 U.S.C. § 1125(d)(1)(D).[10]

In Lee's motion to dismiss, he inserts block quotes from ACPA cases, placing emphasis on the language requiring a "bad faith intent to profit" or the "intent to trade on the goodwill of another's mark." (D.E. 24 at 4-5.) In his reply brief, he expands on this point by arguing that the Complaint does not adequately allege an intent to profit, stating that the websites at issue concern a personal dispute, rather than a commercial dispute. (D.E. 27 at 2-3.)

Some courts have held that a plaintiff must allege bad faith to survive a motion to dismiss an ACPA claim. *See V'soske*, 2001 WL 546567, at *6; *Harrods Ltd. v. Sixty Internet Domain Names*, 110 F. Supp. 2d 420, 427 n.1 (E.D. Va. 2000) (dismissing an ACPA claim because plaintiff "neither explicitly nor implicitly alleged bad faith intent to profit"). Plaintiffs have easily satisfied this requirement by explicitly alleging that Defendants registered the domain names in bad faith. (D.E. 15 ¶ 61.) *See V'soske*, 2001 WL 546567, at *7 (upholding claim where "complaint specifically alleges that [the defendant] registered [the domain names] in bad faith"). Furthermore, although Plaintiffs are not required to allege facts under Rule 8(a), Plaintiffs have sufficiently alleged facts that indicate bad faith under the ACPA's statutory factors. *See generally* 15 U.S.C. § 1125(d)(1)(B)(I). The averments in this regard—such as, for

---

[10] At a minimum, Defendants cite no authority directing a different result, so dismissal at the threshold of the suit is unwarranted.

example, that Defendants' websites are intended to confuse and drive away Plaintiffs' customers, and tarnish Plaintiffs' marks and goodwill to the commercial benefit of Lee, a direct competitor (D.E. 15 ¶ 64)—must be credited at this point in the proceedings, even if Lee claims they are mistaken. At this point of the proceedings, this Court must accept the allegations in the Complaint as true, rather than Lee's denials in his brief.

Lee appears to be relying heavily on *Lucas Nursery and Landscaping v. Grosse*, 359 F.3d 806 (6th Cir. 2004). (D.E. 24 at 4-5; D.E. 27 at 2.) In *Lucas Nursery*, the defendant was sued for registering the domain lucasnursery.com to "detail[] her complaints against Lucas for its allegedly bad service in landscaping her front yard." *Id.*, 359 F.3d at 807. The Court found—upon review of a complete factual record assembled through discovery—that the defendant could not be held liable because she did not have a "bad faith intent to profit." *Id.* at 809-11. In this case, by contrast, Plaintiffs allege that defendants are direct competitors in the Rogers Park real estate market. (D.E. 15 ¶¶ 9-10, 16-18.) Plaintiffs have adequately alleged a bad faith intent to profit, and the Court must take that allegation as true at the motion to dismiss stage. *See V'soske*, 2001 WL 546567, at *7.

Lee also argues that a holding against him on this point "would place an unfair 'prior restraint' upon defendant by his status relative to plaintiff," (D.E. 27 at 3), which the Court interprets as a First Amendment argument. *See, e.g., Tory v. Cochran*, 544 U.S. 734, 738 (2005) (collecting cases). An injunction issued by a court can in some instances constitute a prior restraint of speech in violation of the First Amendment. *See id.* But Plaintiffs allege that Defendants are engaging in commercial speech (D.E. ¶ 63), and such speech is actionable under the First Amendment, as the expressive element of such speech has been constitutionally

14

protected by the Lanham Act defenses if and when the propriety of entering any actual injunctive relief is evaluated. *See, e.g., Ty, Inc. v. Publications Intern., Ltd.*, 81 F. Supp. 2d 899, 901-02 (N.D. Ill. 2000) (collecting authorities). Since the Court has not reached the point where an injunction would issue, Lee's First Amendment claim, at a minimum, is properly evaluated at a later stage of the proceeding, where a record will be available to evaluate the issue. There is no indication at this stage of the proceedings that an injunction would violate the First Amendment, and Defendants have failed to explain how the First Amendment would preclude the possibility of any and all injunctive relief in this relatively orthodox ACPA/Lanham Act case. *See, e.g., id.* at 902 (collecting cases). As a result, dismissal under Rule 12(b)(6) is unwarranted.

Lee also argues that the ACPA claim is barred by the statute of limitations and/or laches. (D.E. 24 at 5-6.) Since the ACPA is an amendment to the Lanham Act, the Court will analyze these arguments under Lanham Act case law generally. *See Ford Motor Co.*, 342 F.3d at 550; *Mashantucket Pequot Tribe v. Redican*, 403 F. Supp. 2d 184, 198 (D. Conn. 2005); *Omega S.A. v. Omega Engineering, Inc.*, 228 F. Supp. 2d 112, 139-41 (D. Conn. 2002).

The Lanham Act does not contain a statute of limitations. However, Lee can rely on the analogous state statute of limitations period "as a baseline for determining whether a presumption of laches exists." *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 821 (7th Cir. 1999); *Johnson v. Exide Corp.*, 152 F. Supp. 2d 1075, 1079 (N.D. Ill. 2001). Laches is the equitable doctrine that "those who sleep on their rights, lose them." *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 792 (7th Cir. 2002); *Hot Wax*, 191 F.3d at 820. Since laches is an affirmative defense, Plaintiffs are not required to anticipate or plead around it in their complaint, although they can plead themselves out of court by "setting forth everything necessary to satisfy

15

the affirmative defense, such as when a complaint plainly reveals that an action is untimely." *Superior Paintless Dent Removal, Inc. v. Superior Dent Removal, Inc.*, 454 F. Supp. 2d 769, 771 (N.D. Ill. 2006) (citing *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir.2005)) (internal quotation marks and brackets omitted).

To establish laches as an affirmative defense, Lee must show (1) Plaintiffs had knowledge of Defendants' use of an allegedly infringing mark, (2) Plaintiffs inexcusably delayed in taking action with respect to Defendants' use, and (3) Defendants would be prejudiced by allowing Plaintiffs to assert their rights. *See Superior Paintless*, 454 F. Supp. 2d at 771 (citing *Chattanoga*, 301 F.3d at 792-93). In assessing laches defenses to Lanham Act claims, courts have found the most analogous Illinois statute of limitations to be the three-year statute of limitations from the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/10a(e). *Nissan Motor Co., Ltd. v. BMW (US) Holding Corp.*, No. 02 C 1245, 2002 WL 31426654, at \*2 (N.D. Ill. Oct. 28, 2002) (citing *Chattanoga*, 301 F.3d at 793).

Since "[t]he defense of laches generally requires a fact-intensive inquiry . . . it is usually not amenable to being resolved on summary judgment," *AutoZone, Inc. v. Strick*, No. 03 C 8152, 2005 WL 2978708, at \*4 (N.D. Ill. Nov. 3, 2005) (collecting cases), let alone on a motion to dismiss. Lee argues that Plaintiffs "knew or should have known about defendant's use of the domain names in October 2000." (D.E. 24 at 6.) However, Plaintiffs have not pleaded themselves out of court on this issue, so this argument is unavailing. *See Superior Paintless*, 454 F. Supp. 2d at 771. In addition, the Complaint does not demonstrate that Plaintiffs' delay in bringing suit is inexcusable or that Lee will be prejudiced by this purported delay. *Id.* Therefore it is "inappropriate to resolve this issue on a motion to dismiss." *Id.*

III.     Count III, Federal Unfair Competition under the Lanham Act, Is Sufficiently Pleaded

Lee moves to dismiss Plaintiffs' Lanham Act claim of unfair competition. (D.E. 24 at 7-11.) To state a claim of unfair competition under the Lanham Act, Plaintiffs must allege that (1) their mark is protectable, and (2) Defendants' use of the mark is likely to cause confusion among consumers. *See, e.g., Papa John's Int'l v. Rezko*, 446 F. Supp. 2d 801, 806 (N.D. Ill. 2006) (collecting cases). Likelihood of confusion "is generally measured by (1) the similarity of the marks; (2) similarly of the products or services at issue; (3) area and manner of concurrent use; (4) sophistication of consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of the defendants to palm off its product as that of another." *Id.* (internal quotation marks and citation omitted).

Lee argues that "[n]o one in his right mind could believe that defendant's website . . . could create 'confusion' among plaintiffs' alleged customers" because "Defendant's website is rife with bold disclaimers that the site is owned and operated by . . . [Lee]." (D.E. 24 at 7.) These disclaimers, however, are not referred to in the Complaint and cannot be considered on a motion to dismiss. Rather, the Court's inquiry is "limited to the factual allegations contained within the four corners of the complaint." *Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1236 (N.D. Ill. 2005). Documents attached to a motion to dismiss may be considered if they are referred to in the complaint and are central to a plaintiff's claim. *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006). This is not an appropriate instance to apply the exception, however, as there is no indication that the attachments are the entirety of Defendants' publications on the web referred to in the Complaint. *See Tierney v. Vahle*, 304 F.3d 734, 739 (7th Cir. 2002) (stating that it is not appropriate to submit "a document in support of [a] Rule

17

12(b)(6) motion that require[s] discovery to authenticate or disambiguate" it); *Reese v. Hammer Financial Corp.*, No. 99 C 0716, 1999 WL 1101677, at *3 (N.D. Ill. Nov. 30, 1999) (declining to apply exception where "it merely raises questions regarding the factual circumstances surrounding" the attached document). Moreover, even if the documents were to be considered, the printouts would not enlighten the Court on Defendants' alleged use of the meta tag "Flentye." (D.E. 15 ¶¶ 30-35); *see also Faegre & Benson, LLP v. Purdy*, 447 F. Supp. 2d 1008, 1017 (D. Minn. 2006) ("Use of a competitor's trademark in a web page's metatags with the purpose of diverting internet users from their intended web site destination can constitute trademark infringement under the Lanham Act.") (citing *Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1062-66 (9th Cir. 1999)).

Lee also argues that "[a] cursory review of the content of the defendants' website will show that plaintiffs plainly were not, nor could have been, damaged." (D.E. 24 at 9.) Once again, the attached printouts from the website cannot be considered. Plaintiffs' have adequately alleged damages by claiming, for instance, that "Defendants' use of meta tags and domain names . . . misleadingly divert Plaintiffs' customers and potential customers to websites wherein Defendants make misrepresentations intended to dissuade consumers from doing business with Plaintiffs." (D.E. 15 ¶ 80.)

Plaintiffs make sufficient allegations in their Complaint to state a claim of unfair competition because they have alleged that their mark is protectable and defendants use of the mark is likely to cause confusion among consumers. *Papa John's*, 446 F. Supp. 2d at 806. Plaintiffs allege that they have used the service marks "Tim Flentye," "Flentye," and "Flentye Properties" to promote real estate, and that such marks "have come to be closely identified with

18

the services provided by Plaintiffs." (D.E. 15 ¶¶ 11-15, 56.) These allegations sufficiently state that Plaintiffs have a protectable mark. *See, e.g., Apbhn, Inc. v. America Online Inc.*, No. TH00-0135-C-M/H, 2001 WL 1028851, at \*5 (S.D. Ind. June 19, 2001) ("Plaintiffs have alleged sufficient facts to state a claim" where "[t]hey have alleged that because of the extensive use of the term 'hometown,' the mark has become associated with their . . . services").

In support of the second element (that Defendants' use of the mark is likely to cause confusion among consumers), Plaintiffs allege that Defendants, who are in the real estate market in the same neighborhood (D.E. 15 ¶¶ 9-10, 16-18), have used the flentye name on a number of websites (*Id.* ¶¶ 20-23), and have used at least one of these websites to direct web surfers to Defendants' website, leestreet.com. (*Id.* ¶ 44.) Plaintiffs also allege that Defendants have used the meta tag "Flentye" to direct users to leestreet.com. (*Id.* ¶¶ 31-33.) Plaintiffs need not prove the likelihood of confusion until a later stage of litigation, and these allegations are sufficient to put Defendants on notice of the federal unfair competition claim. *See, e.g., Papa John's*, 446 F. Supp. 2d at 807-08 (collecting cases). In addition, Plaintiffs' defamation allegations support their unfair competition claim, as "[t]he Lanham Act applies to false statements that misrepresent the quality of another person's commercial activities." *M & R Printing Equip., Inc. v. Anatol Equip. Mfg. Co.*, 321 F. Supp. 2d 949, 951 (N.D. Ill. 2004) (citing *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1266 (10th Cir. 2000) (finding that the defendant's statement that plaintiff was a 'corporate agent of Satan' was actionable under the Lanham Act)).

Lee also moves to dismiss the unfair competition claim on the grounds that it is barred by laches. (D.E. 24 at 10-11.) The unfair competition claim, like the ACPA claim, is based on Defendants' use of Plaintiffs' marks on the subject websites. (D.E. 15 ¶¶ 78-83.) Therefore, for

19

the same reasons that the ACPA claim cannot be dismissed based on a laches defense, the unfair competition claim cannot be dismissed on this basis either.

IV.     Count IV, The Unfair Competition Claim Under Illinois State Law, Is Sufficiently Pleaded

Lee moves to dismiss Count IV, which is brought under the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/1 *et seq.* (D.E. 15 ¶ 86.) A plaintiff can state a claim under the UDTPA by alleging that defendants published untrue or misleading statements that disparaged the plaintiff's goods or services. *M&R Printing*, 321 F. Supp. 2d at 952 (citing 815 ILCS 510/2); *Labor Ready, Inc. v. Williams Staffing, Inc.*, 149 F. Supp. 2d 398, 413 (N.D. Ill. 2001). Plaintiffs sufficiently state a claim under the UDTPA by alleging, for example, that Defendants falsely publish defamatory statements accusing Flentye, who is in the real estate business (D.E. 15 ¶¶ 2, 11, 54), of using a closed circuit video camera for illegal and/or sexually motivated purposes and recording private activities through tenants' windows at night. (*Id.* ¶ 72.)

In his reply brief, Lee asserts a First Amendment "prior restraint" defense similar to the argument he makes with regard to the Lanham Act. (D.E. 27 at 8-9.) The UDTPA has been held a constitutionally permissible "regulation prohibiting false, misleading or deceptive commercial speech." *People ex. rel. Hartigan v. MacLean Hunter Publ'g Corp.*, 457 N.E.2d 480, 488 (Ill. App. Ct. 1983); *see also Commodity Trend Service, Inc. v. CFTC*, 233 F.3d 981, 993 (7th Cir. 2000) (Under the First Amendment, "[m]isleading or deceptive advertising may be prohibited in addition to fraudulent commercial speech.") (collecting cases). Plaintiffs' allegations fall under this category, as they allege that Defendants have made false and misleading statements of fact to

disparage Plaintiffs' business. (D.E. 15 ¶ 86.) Therefore, dismissal of the UDTPA count is not required—at least before discovery even begins—because of First Amendment concerns.

Lee argues that this count is barred by the statute of limitations. (D.E. 24 at 12.) The statute of limitations, like laches, is an affirmative defense, and Plaintiffs are not required to negate an affirmative defense in the Complaint, although they can plead themselves out of court by alleging facts that demonstrate the claim is time-barred. *See Tregenza v. Great Am. Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993) (collecting cases). The statute of limitations for an action under the UDTPA is three years. *See Hexagon Packaging Corp. v. Mandy Gutterman & Assocs., Inc.*, Nos. 96 C 4356, 99 C 5493, 2000 WL 226396, at *7 (N.D. Ill. Feb. 17, 2000) (citing 815 ILCS 505/10a(e)). Plaintiffs have not pleaded facts demonstrating that their claim is time-barred as a matter of law. Therefore, Defendants' motion to dismiss Count IV is respectfully denied.

V.      Count II, the Defamation Claim, Is Adequately Pleaded

Plaintiffs argue that the defamation claim must be dismissed, or a more definite statement required, because "Plaintiffs discuss general statements made by a Defendant, but nothing more." (D.E. 21 at 3.) To bring a defamation claim, Plaintiffs are required to plead "the alleged defamatory words published or spoken by the defendant," but "need not allege the defamatory language verbatim." *Emery v. Northeast Ill. Reg'l Commuter R.R. Corp.*, No. 02 C 9303, 2003 WL 22176077, at *7 (N.D. Ill. Sept. 18, 2003) (internal quotation marks and citation omitted). In other words, Plaintiffs need to be specific enough "to allow the defendant to respond appropriately, which includes being able to determine whether the language is defamatory." *Betten v. Citibank, F.S.B.*, No. 94 C 5460, 1995 WL 387802, at *3 (N.D. Ill. June 28, 1995)

(collecting cases).

Plaintiffs have put many of the allegedly defamatory statements in quotation marks. (D.E. 15 ¶ 72.) The statements that are not quotation marks are alleged with sufficient specificity to allow Kathrein to respond. (*Id.* ¶ 73.) Plaintiffs identify the websites on which the alleged defamatory statements are published, and specify the nature of the statements that are allegedly "[e]xtreme in both length and pornographic nature."[11] (*Id.*) These allegations are sufficient to survive a motion to dismiss. *See Chisholm v. Foothill Capital Corp.*, 940 F. Supp. 1273, 1285 (N.D. Ill. 1996) (finding defamation allegation sufficient where plaintiff "has alleged the basic substance of the statements" and stating that "the exact details . . . may be discerned through discovery").

Kathrein also moves to dismiss the defamation claim on the ground that the alleged defamatory statements are "[a]t most . . . statements of opinion or criticism and are not defamatory." (D.E. 21 at 5.) The First Amendment protects opinions from being actionable in defamation claims. *Lott v. Levitt*, 469 F. Supp. 2d 575, 584 (N.D. Ill. 2007) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)); *see also Solaia Tech., LLC v. Specialty Pub. Co.*, 852 N.E.2d 825, 839-40 (Ill. 2006). To determine whether an alleged defamatory statement is fact or opinion, the Court looks to "whether the statement has a precise and readily understood meaning; whether the statement is verifiable; and whether the statement's literary or social context signals that it has factual content." *Solaia Tech.*, 852 N.E.2d at 840 (collecting cases).

---

[11] In their response, Plaintiffs state that "[t]he additional defamatory statements, the profane accusations of sexual deviance, will be presented under protective seal." (D.E. 25 at 9.) Although this assurance is not necessary to survive the motion to dismiss, it does explain why these statements are not presented in quotation marks.

In support of its argument that the alleged defamatory statements are opinion, Kathrein refers the following allegations in its brief: "That Flentye records the activities of tenants at night, that he possesses illegal video tapes; that Plaintiff Flynte [sic] engages in harassment at the office and lacks an ethical compass." (D.E. 21 at 5.) The first two statements are certainly "ascertainable, verifiable phenomena," and therefore potentially actionable. *Patlovich v. Rudd*, 949 F. Supp. 585, 593 (N.D. Ill. 1996). Given the Defendants have not proposed that the Court should attempt to line-edit the defamation claim, but rather seek wholesale dismissal of it, that is enough to dispose of the motion to dismiss the claim.

Moreover, the Court notes that while the allegation that Flentye engages in harassment is more subjective, it may still be actionable. The idea of objective assessments of "harassment" is not unknown in the law—*see, e.g., Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993)—and Defendants offer no compelling authority for the idea that it conclusively can be said, before discovery even begins, that the harassment statement is an unverifiable or subjective assertion of opinion within the context of this case. The only statement that appears to be clearly opinion is that Flentye "lacks an ethical compass." (D.E. 21 at 5; D.E. 15 ¶ 72.) However, one or even two statements of opinion will not defeat Plaintiffs' defamation claim, since Plaintiffs have alleged defamatory statements of fact and "[m]ixed expressions of fact and opinion may be actionable if the facts are subject to verification." *Bogosian v. Board of Educ. of Cmty. Unit Sch. Dist. 200*, 134 F. Supp. 2d 952, 957 (N.D. Ill. 2001) (citing *Quality Granite Constr. Co., Inc. v. Hurst-Rosche Eng's, Inc.*, 632 N.E.2d 1139, 1143 (Ill. App. Ct. 1994) (collecting Illinois cases)). Again, Defendants do not appear to seek dismissal of the defamation claim on the basis of opinion in a piecemeal fashion, assuming such surgical excision is proper under Rule 12(b)(6). It

is clear, at least within the context of Rule 12(b)(6) analysis, that dismissal of the defamation claim in its entirety is unwarranted. Furthermore, analysis of whether particular statements are fact or opinion will be better served with an adequate factual record to determine the context in which the statements were made.

Kathrein and Lee both also argue that the defamation claim is time-barred. (D.E. 21 at 7; D.E. 24 at 6-7.) As Kathrein points out, Illinois has a one year statute of limitations for defamation actions. 735 ILCS 5/13-201; *accord Bakalis v. Bd. of Trs. of Cmty. College Dist. No. 504*, 948 F. Supp. 729, 736 (N.D. Ill. 1996). The statute begins to run on the date of publication, or in some instances, on the date the plaintiff discovered the defamatory statement. *See Naeemullah v. Citicorp Services, Inc.*, 78 F. Supp. 2d 783, 791 (N.D. Ill. 1999). Once again, the statute of limitations is an affirmative defense, so Plaintiffs are not required to allege facts that demonstrate the claim is not time-barred. *See Tregenza*, 12 F.3d at 718.

The Complaint does not specify when the defamatory material was first published or when Plaintiffs first discovered it, so Plaintiffs have not pleaded themselves out of court. In addition, Plaintiffs allege that Defendants "have made *and continue to make* unprivileged publications of false and defamatory statements regarding Plaintiff Tim Flentye and his business." (D.E. 15 ¶ 72; emphasis added). Since the Complaint does not demonstrate that the claim is time-barred, the motion to dismiss the defamation claim is respectfully denied.

VI.    Count VI, The Intentional Infliction of Emotional Distress Count, Is Adequately Pleaded, Although Punitive Damages Are Not Recoverable on This Count Under Illinois Law

Kathrein and Lee also move to dismiss Plaintiffs' claim for intentional infliction of emotional distress ("IIED"). To state a claim for IIED under Illinois law, Plaintiff must establish

24

that: (1) Defendants' conduct was extreme and outrageous; (2) Defendants either intended this conduct to inflict severe emotional distress, or knew that there was a high probability that this conduct would cause severe emotional distress; and (3) Defendants conduct in fact caused severe emotional distress. *See, e.g., Doe v. Calumet City*, 641 N.E.2d 498, 506 (Ill. 1994); *accord Lifton v. Bd. Educ. of City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005). Whether conduct is extreme and outrageous is judged by an objective standard. *See Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997). "Conduct is extreme and outrageous only if the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency." *Id.* (collecting cases; internal quotation marks omitted). Furthermore, the stress inflicted must be "so severe that no reasonable man could be expected to endure it." *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (internal quotation marks and citation omitted). Accordingly, for Defendants to be held liable, the conduct "must be such that the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!'" *Van Stan*, 125 F.3d at 567 (7th Cir. 1997) (internal quotation marks and citation omitted).

Kathrein and Lee argue that the IIED claim must be dismissed because the conduct alleged is not outrageous as a matter of law. (D.E. 21 at 6.) At the motion to dismiss stage, however, Plaintiffs are "not required to allege facts sufficient to support each element" of an IIED claim. *McLaughlin v. City of Chicago*, No. 04 C 7156, 2005 WL 1126902, at *6 (N.D. Ill. May 5, 2005). Plaintiffs allege that Defendants published defamatory statements that Plaintiffs secretly use a closed circuit video camera to record their tenants, (D.E. 15 ¶ 72), and "embrace thievery, deviance and racism." (*Id.* ¶ 73.) Plaintiffs further allege that Defendants published

25

"profanity laced depictions of . . . Flentye engaging in bestiality, scatology, and other highly defamatory assertions of a sexually repugnant nature." (*Id.*) Under Illinois law, defamatory statements, if sufficiently extreme and outrageous, can support an IIED claim. *See Goldstein v. Kinney Shoe Corp.*, 931 F. Supp. 595, 599 (N.D. Ill. 1996) (defamatory statements that plaintiff had engaged in "criminal sexual conduct" supported claim for IIED); *Dawson v. New York Life Ins. Co.*, 932 F. Supp. 1509, 1545-46 (N.D. Ill. 1996) (defamatory statements that "effectively plac[ed] responsibility for the [insurance company's] multi-million adverse judgment on [plaintiff], and . . . attribut[ed] knowledge of, encouragement of, and participation in, forgery and policyholder fraud to [plaintiff]," supported IIED claim).

Although courts have dismissed some claims of IIED based on defamation, "on the ground that the conduct was not 'extreme and outrageous,'" *Cook v. Winfrey*, 141 F.3d 322, 331-32 (7th Cir. 1998) (collecting cases), the alleged defamatory statements in the Complaint are at least arguably more extreme than the statements found in that line of cases. *See, e.g., Winfrey*, 141 F.3d at 331 (IIED claim cannot be maintained on allegations that defendant called plaintiff "'a liar' who was not to be trusted or believed, stated that he would be very sorry if he told his story to anyone else, and denied that she had any prior relationship with him"); *Layne v. Plumbers Building Supply Co.*, 569 N.E.2d 1104, 1109 (Ill. App. Ct. 1991) (defendant's statement to police that "plaintiff had harassed, assaulted and verbally threatened a co-worker" was not sufficient to state IIED claim). Read in the light most favorable to Plaintiffs, the defamatory statements alleged in the Complaint are more on the level of *Goldstein* and *Dawson*, rather than *Winfrey* and *Layne*. In any event, this sort of detailed fact-parsing and distinguishing of factual records is not properly done in this case under a Rule 12(b)(6) analysis.

In addition to the defamation allegations, Plaintiffs support their IIED claim by alleging that Defendants have published a photograph of Flentye's family cemetery marker with garbage at the base of it. (D.E. 15 ¶ 97.) Furthermore, Defendants have allegedly been trying to harm Defendants' business by misusing the Flentye name on the internet (*see, e.g., id.* ¶ 64), and allegedly continued to misuse the Flentye name even after an arbitration decision in Plaintiffs' favor. (*Id.* ¶¶ 28-29.) When combined with the defamatory allegations, these additional allegations are more than enough to state an IIED claim. *See Graves v. Man Group USA, Inc.*, No. 06 C 3015, 2007 WL 914906, *5 (N.D. Ill. March 27, 2007) (allegations that defendants, "knowing that [plaintiff] was in and out of the hospital for alcoholism, told [plaintiff's] wife and sister that he had made death threats against his co-workers," combined with allegation that defendants "took the additional step of contacting the police and having them attend his grandfather's funeral," were sufficient to state IIED claim). At this stage of the proceedings, the Court cannot say that the Complaint fails to state a claim for IIED as a matter of law.[12]

Kathrein and Lee further argue that the IIED claim is time-barred. (D.E. 21 at 8.) The statute of limitations for IIED claims in Illinois is two years. *See Klipfel v. Bureau of Alcohol,*

---

[12] In support of its motion to dismiss the IIED claim, Kathrein states that "one of the Plaintiffs, 7703 Sheridan Road Building Corp., is not capable of suffering mental anguish because it is a corporation." (D.E. 21 at 6-7) (citing *Brown & Williamson Tobacco v. Jacobson*, 644 F. Supp. 1240, 1262 (N.D. Ill. 1986)). Lee's brief echoes this argument. (D.E. 24 at 14.) This aspect of *Brown & Williamson*, however, concerned the amount of damages available in a libel action, and did not address the issue of whether a corporation can state an IIED action at all. (*Brown & Williamson* explained that a corporation certainly could advance a libel claim—although its corporate status might affect the amount of damages it properly could recover for such harm—and that a corporation potentially could recover various types of damages, including nominal damages, if it could prove a violation of its rights. *Id.*, 644 F. Supp. at 1259-63.) Furthermore, because one of the Plaintiffs, Tim Flentye, is an individual, such an argument would not justify dismissal of the defamation count in any event. Because the issue has been briefed in, with all respect, cursory fashion at best, the Court will not summarily dismiss the corporate plaintiff's IIED claim at this juncture.

*Tobacco & Firearms*, No. 94 C 6415, 1998 WL 525441, at *1 (N.D. Ill. Aug. 18, 1998) (citing 735 ILCS 5/13-202). Once again, Plaintiffs are not required to plead that they are within the statute of limitations. *See Tregenza*, 12 F.3d at 718. The IIED claim is based on some of the same conduct that serves as the basis for the defamation claim. Therefore, for the same reasons the defamation claim cannot be found time-barred, the IIED claim is not time-barred under Rule 12(b)(6) either. In addition, Plaintiffs' allege that "Defendants continue to maintain websites associated with the disputed domain names and have updated the content and links of these websites both frequently and recently." (D.E. 15 ¶ 47.) Since these allegations are relevant to their IIED claim, they provide further support that the IIED claim is not time-barred.

Kathrein and Lee also argue that Plaintiffs' claim for punitive damages is improper because Illinois law does not allow an award of punitive damages for an IIED claim. (D.E. 21 at 7.) Kathrein is correct. Under Illinois law, punitive damages are not available for claims of intentional infliction of emotional distress. *See, e.g.*, *Coleman v. Joliet Junior College*, No. 06 C 2135, 2006 WL 3524417, at *4 (N.D. Ill. Dec. 4, 2006) (collecting cases); *Peck v. West Aurora School Dist. 129*, No. 06 C 1153, 2006 WL 2579678, at *8 (N.D. Ill. Aug. 30, 2006). Therefore, the claim for punitive damages in Count VI is stricken.

VII.    Count V, for Misappropriation of Identity, Is Adequately Pleaded

Lee also moves to dismiss Plaintiffs' claim of "misappropriation of identity." (D.E. 24 at 12-13.) The appropriation of identity cause of action in Illinois is sometimes referred to as the "right of publicity." *Blair v. Nevada Landing P'ship*, 859 N.E.2d 1188, 1191 (Ill. App. Ct. 2006) (citation omitted). The elements of a common law appropriation action are "an appropriation, without consent, of one's name or likeness for another's use or benefit." *Dwyer v. American*

28

*Exp. Co.*, 652 N.E.2d 1351, 1355 (Ill. App. Ct. 1995) (collecting authorities). This cause of action was intended "to protect a person from having his name or image used for commercial purposes without consent." *Id.* (citation omitted).

In 1999, Illinois passed the Right to Publicity Act, 765 ILCS 1075/1 *et. seq.*, which "completely replaced the common-law tort of appropriation of likeness." *Blair*, 859 N.E.2d at 1192 (citing 765 ILCS 1075/60); *accord Brady Publ'g*, 2002 WL 1400345, at *3. At least for present purposes, Illinois appellate precedent appears to teach that the elements of the statutory claim are materially identical to the former common law claim, although the statutory claim may reach more broadly than the common law claim did in certain instances. *See Blair*, 859 N.E.2d at 1192 ("To allege a statutory claim of appropriation of likeness under the Right of Publicity Act, one must set forth essentially the same three elements that were required for a common-law claim of appropriation of likeness."); *Brady Publ'g*, 2002 WL 1400345, at *3.

The Illinois Right of Publicity Act prohibits the use of a person's identity "for commercial purposes during the individual's lifetime without having obtained previous written consent." 765 ILCS 1075/30(a). "Commercial purposes" is defined as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods or services, or (iii) for the purpose of fundraising." 765 ILCS 1075/5. "Identity" is defined as "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." 765 ILCS 1075/5.

Plaintiffs have stated a claim under the Right to Publicity Act, as they allege that

Defendants have appropriated the Flentye name through the use of domain names and meta tags for commercial gain. (D.E. 15 ¶ 89.) In addition, Plaintiffs allege that Defendants use "numerous e-mail addresses subsuming Plaintiff's name such as 'timflentye@gmail.com' in order to tarnish the goodwill of Plaintiffs." (*Id.* ¶ 92.) These allegations are sufficient to put Defendants on notice of Plaintiffs' claim. *Accord, e.g., Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 908 (7th Cir. 2004).

Lee argues that he is only engaging in criticism, which would not be a commercial use. (D.E. 24 at 13; D.E. 27 at 8.) The Right to Publicity Act does not apply to the "use of an individual's identity for non-commercial purposes, including any news, public affairs, or sports broadcast or account, or any political campaign." 765 ILCS 1075/35(b)(2). However, Plaintiffs allege that Defendants are using the Flentye name for commercial purposes, and the Court must accept that allegation as true for purposes of the motion to dismiss.

Lee also argues that the appropriation of likeness claim is barred by the statute of limitations. (D.E. 24 at 13.) Again, this matter relates to an affirmative defense that typically cannot be resolved on a motion to dismiss. The Court cannot say with confidence that Plaintiffs have pleaded themselves out of court on limitations grounds as to this count. Accordingly, dismissal under Rule 12(b)(6) is not appropriate.

## CONCLUSION

For the reasons stated above, Defendants' motions to dismiss and Kathrein's motion for a more definite statement are denied, with the of the exception of Defendants' motions to dismiss the prayer for punitive damages on the IIED claim.

Mark Filip
United States District Judge
Northern District of Illinois

Date: *April 18 2007*